| | | |
|---|---|---|
| JUANITA EUGENIA GUTIERREZ | § | |
| GORDILLO, et al, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 9-09-cv-164 (TJW) |
| v. | § | |
| | § | |
| GULF COAST MARINE & ASSOCIATES, | § | |
| INC, et al, | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Consolidated Motion to Dismiss for Forum Non

Conveniens (Dkt. No. 196 in Case No. 9:08cv200). On September 15, 2010, the Court

consolidated the following seven cases for the limited purpose of briefing and deciding the

common *forum non conveniens* issue in each case: *Dominguez v. Gulf Coast Marine & Assoc.,*

*Inc., et al*, Case No. 9:08cv200; *Lorenzana v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No.

9:09cv150; *Friaz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv162; *Perez v. Gulf*

*Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv156; *Jimenez Govea v. Gulf Coast Marine &*

*Assoc., Inc., et al.*, Case No. 9:09cv170; *Gordillo v. Gulf Coast Marine & Assoc., Inc., et al.*,

Case No. 9:09cv164; *De La Cruz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No.

9:09cv167 (Dkt. No. 196 in Case No. 9:08cv200).[1] The cases all arise out of the same accident

and involve virtually identical causes of action against the same defendants.[2] Pursuant to the

Court's Order, Defendants Schlumberger Technology Corporation ("STC"), Schlumberger

---

[1] The Order is Dkt. No. 63 in Case No. 9:09cv150, Dkt. No. 87 in Case No. 9:09cv162, Dkt. No. 83 in Case No. 9:09cv156, Dkt. No. 77 in Case No. 9:09cv170, Dkt. No. 51 in Case No. 9:09cv164, and Dkt. No. 100 in Case No. 9:09cv167.

[2] Glen Carter is a defendant in Case Nos. 9:08cv200, 9:09cv164, and 9:09cv167, but has been dismissed from Case Nos. 9:09cv150, 9:09cv156, 9:09cv162, and 9:09cv170.

Limited ("SL") (collectively, Schlumberger), Gulf Coast Marine & Associates ("Gulf Coast"), Glen Carter ("Carter"),[3] Halliburton Energy Services, Inc., f/k/a Halliburton Company ("Halliburton"), and Matthews-Daniel Company ("Matthews-Daniel") (collectively, "Defendants") filed a consolidated motion to dismiss all seven consolidated cases for *forum non conveniens*. The Court held a hearing on Defendants' consolidated motion on March 10, 2011. Having considered the parties' arguments, the applicable law, and the evidence presented, the Court CONDITIONALLY GRANTS Defendants' Consolidated Motion to Dismiss for Forum Non Conveniens (Dkt. No. 225 in Case No. 9:08cv200). The Court FURTHER ORDERS that, subject to a return jurisdiction clause and the other conditions laid out in this order, the following seven cases be dismissed for forum non conveniens: *Dominguez v. Gulf Coast Marine & Assoc., Inc., et al*, Case No. 9:08cv200; *Lorenzana v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv150; *Friaz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv162; *Perez v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv156; *Jimenez Govea v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv170; *Gordillo v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv164; *De La Cruz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv167.

## I.   Factual Background

These cases are based on an accident that occurred on a mobile drilling rig and oil production platform just north of the Mexican coast in the Gulf of Campeche on October 23, 2007. On October 21, 2007, the drilling rig Usumacinta was moved alongside the KAB-101 production platform to begin work on several oil wells in Mexican territorial waters, approximately 18 kilometers off the coast in the Bay of Campeche. Mexico's state-owned oil

---

[3] Defendant Glen Carter was named in the Motion, but was left out of the ECF filing caption. Glen Carter then filed an adoption and joinder in the consolidated motion (Dkt. No. 227).

company, Petróleos Mexicanos ("PEMEX"), owned the KAB-101 platform, and Perforadora Central, a Mexican company, owned the Usumacinta rig and leased it to PEMEX. Plaintiffs are all Mexican residents, and they, or their decedents, were employed by Perforadora Central, PEMEX, or PEMEX contractors Central de Desarrollos Marinos, S.A. de C.V. and Sercomsa, S.A. de C.V. (Servicios Comodatarios), to assist on the rigs.

On October 23, 2007, the Bay of Campeche was engulfed in hurricane-level conditions when a cold front moved into the Bay. The Usumacinta rig shifted positions during the storm and struck the KAB-101 platform, damaging one of the oil wells' production valve trees and causing a hydrocarbon leak. After efforts to control the leak failed, Plaintiffs allege that PEMEX ordered the evacuation of the platform and drilling rig. The workers boarded two lifeboats, known as *mandarinas*, which PEMEX owned and operated. While in the water, the *mandarinas*, began taking on water and sustained damage in the rough water. Some of the occupants abandoned the *mandarinas*, both of which eventually capsized. Once the storm subsided, a search was undertaken and 68 people were rescued. However, 22 people died as a result of the accident.

Plaintiffs allege that the accident was set into motion when Defendant Matthews-Daniel, a United States company based in Texas, approved the decision to move the Usumacinta rig next to the KAB-101 platform in near-hurricane-force winds and anchor it to the seafloor next to the rig. According to Plaintiffs, Matthews-Daniel had been hired to assess the suitability of the seabed and erroneously certified it as "virgin," based on outdated information. Plaintiffs allege that a prudent operator would have done a proper analysis of the seafloor and discovered that previous operations had penetrated the seafloor, making it unstable. When the Usumacinta rig was moved alongside the KAB-101 platform, the unstable seafloor shifted and caused the rig to

settle and collapse onto the KAB-101 platform. This collision, in turn, caused the hydrocarbon leak.

Plaintiffs further allege that Defendant Gulf Coast, a U.S. company, and Defendant Carter, a U.S. resident, were responsible for moving the Usumacinta rig into location and anchoring it to the seabed alongside the KAB-101 platform. Plaintiffs claim that Gulf Coast and Carter did so without "variable loads"—i.e., adequate loads to maintain the stability of the rig— in near hurricane-force winds. Plaintiffs contend that Gulf Coast and Carter should have paid closer attention to the weather conditions and should have known that the Usumacinta's stability without a variable load was inadequate for serious weather conditions.

Finally, Plaintiffs assert that one or both of the subsurface safety valves on the KAB-101 platform were faulty, failed to cut off the leak, and forced the evacuation of the platform. According to Plaintiffs, the valves were intended to stop the flow of oil and gas should anything hit the well below or above the water, but the valves failed to seal the oil and gas leak. Plaintiffs allege that the valves were designed, manufactured, and installed by Defendants Schlumberger and/or Halliburton in the United States. Plaintiffs claim that Schlumberger's witnesses on the design and manufacture of its valve reside in Rosharon and Houston, Texas, and Plaintiffs presume that Halliburton's witnesses reside in Dallas, Texas.

Numerous investigations of the accident occurred in Mexico. The most important investigation for purposes of the motion to dismiss was a root cause analysis done by Battelle Memorial Institute (the "Battelle Report"), which was sponsored by PEMEX. The Battelle Report concluded that numerous U.S. companies, including the Defendants in these cases, were ultimately responsible for the accident. Most, if not all, of Plaintiffs' allegations against Defendants are based on the conclusions drawn in the Battelle Report.

Plaintiffs' original complaints in the consolidated cases asserted negligence, gross negligence, products liability, and wrongful death claims against various defendants under general federal or international maritime law or, in the alternative, under Texas law or the relevant law of Mexico. The Court dismissed Plaintiffs' state law claims with prejudice because they were preempted by the Jones Act. In addition, the Court dismissed Plaintiffs' federal maritime claims without prejudice because Plaintiffs failed to alleged that there was no available remedy in Mexico, as required to pursue a federal maritime claim under the Jones Act. In their amended complaints, Plaintiffs abandoned their federal maritime claims and alleged only state law claims and claims under Mexican law. The Court then dismissed, again, Plaintiffs' state law claims as being preempted by the Jones Act. Accordingly, the only claims remaining are Plaintiffs' Mexican law claims for civil liability and moral damages.[4]

Defendants argue that Mexico is a more appropriate forum for the adjudication of these claims because the cases arise out of the collision of a mobile drilling rig and oil platform in Mexican territorial waters during the production of Mexican oil and gas resources. Additionally, all of the plaintiffs are Mexican residents and they, or there decedents, were all employed by Mexican companies. Defendants argue that because Plaintiffs make claims under Mexican law, arising from events that occurred within the jurisdiction of the Mexican courts and involving Mexican residents and companies, Mexico is the appropriate forum for adjudicating the claims. Defendants also argue that the witnesses and documents regarding the accident and subsequent investigation are all located in Mexico. Plaintiffs, however, argue that all of the remaining

---

[4] Plaintiffs' claims are identical in every case except for the *De La Cruz* case, Case No. 9:09cv167. In that case, Plaintiffs' amended complaint included claims under Texas state law, OSHA, DOSHA, Mexican law, and several international treaties. *See De La Cruz* Amended Complaint, ¶¶ 48-93 (Dkt. No. 200). In an Order dated March 7, 2011, the Court dismissed the *De La Cruz* plaintiffs' state law claims, federal maritime law claims, and the plaintiffs' claims under OSHA, DOSHA, and various international conventions and treaties (Dkt. No. 152). As a result, only the plaintiffs' claims under Mexican law survived.

Defendants are U.S. companies or citizens and that they made policy, safety, corporate, manufacturing, supervision, and design decisions in the United States that directly led to the events at issue in the action. Therefore, according to Plaintiffs, the documents and witnesses regarding liability are located in the United States.

## II.    Analysis

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Koster v. American Lumbermens Mutual Casulty Co*., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court established the principle "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized." *Gulf Oil*, 330 U.S. at 507. Therefore, "[t]he doctrine of *forum non conveniens* rests upon a court's inherent power to control the parties and cases before it and to prevent its processes from becoming an instrument of abuse or injustice." *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1153-54 (5th Cir.1987)(en banc), *vacated by* Pan Am. World Airways, Inc. V. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated except as to damages by Air Crash Disaster v. Pan Am. World Airways, Inc*., 883 F.2d 17 (5th Cir.1989)(en banc). According to the Court, in deciding whether to exercise or decline jurisdiction, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster*, 330 U.S. at 527. "The determination of what is most convenient rests upon several private and public factors which the Court stated should be considered and balanced by a court when presented with a motion to dismiss for *forum non conveniens*." *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1162. "A defendant of course bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *Id.* at 1164. "This burden of persuasion runs to all elements of the *forum non conveniens* analysis," including demonstrating that an "adequate and available forum exists as to

all defendants if there are several." *Id*. If the defendant meets this initial burden, "it must also establish that the private and public interests weigh heavily on the side of trial in the foreign forum." *Id*. The Supreme Court has held that a moving defendant need not submit overly detailed affidavits to carry its burden, but it "must provide enough information to enable the district court to balance the parties' interests." *Reyno*, 454 U.S. at 258.

In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court reaffirmed that the principles enunciated in *Gulf Oil* and *Koster* are appropriate for use in diversity cases. The decision of whether to grant or deny a motion to dismiss for *forum non conveniens* is within the discretion of the court. *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1165. The decision "should be an exercise in structured discretion founded on a procedural framework guiding the district court's decisionmaking process." *Id*. The denial of a motion to dismiss for *forum non conveniens* may be reversed only when there has been a clear abuse of discretion. *Reyno*, 454 U.S. at 255. The trial court's decision "deserves substantial deference" when the court has considered all relevant factors and where its balancing of the factors is reasonable. *Id*.

## A. Available and Adequate Alternative Forum

Prior to balancing the private and public interest factors, a court must first determine whether another adequate forum is available to hear the case "because the *forum non conveniens* presupposes the existence of at least two forums in which all defendants are amenable to process." *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1164. An alternative forum is available, for purposes of a *forum non conveniens* analysis, when the entire case and all parties can come within the jurisdiction of that forum. *Saqui v. Pride Central America, LLC*, 595 F.3d 206, 211 (5th Cir. 2010).

An alternative forum is adequate, for purposes of *forum non conveniens* analysis, when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American Court. *Saqui*, 595 F.3d at 212. Additionally, the mere fact that the amount of damages would be more limited under Mexican as opposed to American law, does not provide the basis for finding that Mexican courts are an inadequate alternative forum. *Id.* The Supreme Court has made it clear that the Court may not give substantial weight to the fact that trail in a foreign forum will result in a change in law unfavorable to the plaintiff or the fact that the defendants may be motivated by a desire to obtain a more favorable forum in bringing the motion to dismiss for *forum non conveniens*. *Id.* at 252-52 and n. 19.

Because the Defendants have agreed to submit to the jurisdiction of the Mexican courts, Plaintiffs concede that Mexico is an available and adequate forum for the adjudication of these claims.[5] *See In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009).

---

[5] Plaintiffs' consolidated briefing in response to the motion to dismiss for *forum non conveniens* concedes that Mexico is an available and adequate forum for these cases. Plaintiffs also conceded that they were not challenging the adequacy or availability of the Mexican courts as an alternative forum during their oral argument at the hearing on the motion to dismiss. Counsel for plaintiffs in Case No. 9:09cv167 (the "De La Cruz Plaintiffs") appeared at the hearing and made a passing reference to State Department advisories warning against travel to Mexico. Then, after the hearing, the De La Cruz Plaintiffs filed a motion seeking leave to take additional discovery and file post-argument supplemental briefing on the motion to dismiss for *forum non conveniens* (Dkt. No. 155 in Case No. 9:09cv167). In their motion, the De La Cruz Plaintiffs contested the adequacy of Mexico as an alternative forum for the first time. The Court denied the De La Cruz Plaintiffs' motion for leave to file supplemental briefing on various grounds (Dkt. No. 157). However, even if the De La Cruz Plaintiffs had been allowed to belatedly contest the adequacy of Mexico as an alternative forum, the Fifth Circuit has made it abundantly clear that where the Defendants will submit to jurisdiction, Mexico is an available and adequate forum for the resolution of these types of disputes.

The Fifth Circuit has repeatedly held that Mexico is an available and adequate forum for Mexican residents to pursue claims against American companies for injuries arising from accidents in Mexico. *See, e.g., Saqui*, 595 F.3d at 211-213; *In re Ford Motor Co.*, 591 F.3d at 412-13; *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 804 (5th Cir. 2007). In *In re Ford Motor Co.*, the Fifth Circuit noted that "[w]e have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there." 591 F.3d at 412 (citing *Gonzalex v. Chrysler Corp.*. 301 F.3d 377, 380 n. 3 (5th Cir. 2002); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003); *DTEX*, 508 F.3d at 804). After referencing numerous Fifth Circuit opinions on the issue, the Court emphasized that:

## B. Private and Public Interest Factors

Plaintiffs have conceded that Mexico is an available and adequate forum for the adjudication of these claims, and, therefore, the only issue in dispute is whether the private and public interest factors weigh heavily in favor of dismissal to Mexico. *In re Air Crash Disaster Near New Orleans*, 821 F.2d. at 1164. Although a plaintiff's choice of forum is generally given great deference, "a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum." *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1164. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Reyno*, 454 U.S. at 255-56. Plaintiffs are all Mexican citizens, and, therefore, their choice to bring suit in this Court is entitled to less deference in balancing the private and public interest factors.

### 1. Private Interest Factors

The private interest factors to be considered in the *forum non conveniens* analysis are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the costs of obtaining attendance of willing witnesses; (4) the probability of view of the premises, if view would be appropriate to the action; and (5) all

---

[t]hese many decisions create a nearly airtight presumption that Mexico is an available forum. We have held that if a defendant submits to jurisdiction, there is a presumption of forum availability . . . petitioners' willingness to submit to jurisdiction in Mexico makes it an available forum for FNC purposes, based on the binding precedent of this court.

*In re Ford Motor Co.*, 591 F.3d at 412. In another recent Fifth Circuit opinion, the Court rejected the argument that Mexico was an inadequate forum because (1) the amount of damages would be more limited under Mexican law, (2) there exists corruption in the Mexican courts, (3) the case would experience long delays in the Mexican court system, and (3) that, under Mexican law, it would be virtually impossible to subpoena out of country witnesses. *Saqui*, 595 F.3d at 212. In reaching this decision, the Fifth Circuit upheld the district court's ruling that the plaintiff had not produced compelling evidence that corruption in the Mexican courts made Mexico an inadequate forum and that there would likely be fewer delays in a Mexican court because the accident took place in Mexican waters and involved Mexican citizens and corporations. *Id*. at 212-13.

other practical problems that make trial of a case easy, expeditious, and inexpensive. *Saqui*, 595 F.3d at 213 (citing *Gulf Oil Corp.*, 330 U.S at 508).

### a. The Relative Ease of Access to Sources of Proof

The first private interest factor, the relative ease of access to sources of proof, favors dismissal. These cases arise out of an accident that occurred on a drilling rig and platform in Mexican territorial waters. Plaintiffs are all Mexican residents, and they, or their decedents, were working on the platform as a result of their employment by Mexican companies during the production of Mexican oil and gas resources. The physical and documentary evidence regarding the drilling rig Usumancinta, the KAB-101 production platform, the relevant oil wells, and the lifeboats, or *mandarinas*, that are at the center of this disaster are all located in Mexico. It would be impossible to investigate and evaluate the cause or causes of the accident without access to this evidence. In addition, the Defendants have shown that Plaintiffs' employment, tax, and medical records, PEMEX's and Pemex Exploración y Productión's records, policies, and other documents, as well as the rescue workers' records, policies, and other documents are all located in Mexico. Not only are all of these documents located in Mexico, but they are the property of third parties who could not be compelled to produce them in this forum. Even if they could somehow be obtained, most if not all of these documents are in Spanish and translating them would be burdensome, time-consuming, and costly in this forum.

Plaintiffs, however, argue that although the accident itself took place in Mexico and the Plaintiffs are Mexican residents, these facts are secondary to the substantive liability issues. Plaintiffs contend that these cases are really about the wrongful conduct of U.S. companies and one U.S. resident, Glen Carter, whose acts and omission occurred in the United States. Plaintiffs argue that the witnesses and evidence in Mexico go primarily to damages, and that the damage

issues are secondary to the liability issues, the evidence for which is primarily in the United States. Plaintiffs point out that all of the Defendants are located in the United States, along with the evidence and witnesses concerning their liability.

For example, Plaintiff alleges that: (1) Matthews-Daniel surveyed the seafloor and made decisions about the movement and placement of mobile rigs from its offices in Texas, where its records are held; (2) Gulf Coast and Glen Carter moved the rig in the Bay of Campeche, but their records and witnesses are in the United States; and (3) Schlumberger and Halliburton designed the faulty subsurface safety valves in the United States. Plaintiffs argue that the essential evidence related to Defendants' liability is in the United States, including:

- Evidence relating to the research, development, design, manufacture, and installation of Schlumberger's Camco valves;
- Schlumberger's testing records relating to its Camco valves;
- Schlumberger's records relating to the accident rate of its Camco valves;
- Evidence of Gulf Coast's analysis of Cold Front No. 4 and its decision to move the Usumacinta rig;
- Gulf Coast's policies and procedure regarding moving drilling rigs;
- Gulf Coasts' policies and procedure regarding monitoring weather conditions;
- Gulf Coasts' policies and procedures regarding safety;
- Halliburton's evidence relating to the research, development, design, manufacture, and installation of its subsurface valves;
- Halliburton's testing records relating to its subsurface valves;
- Halliburton's records relating to the accident rate of its subsurface valves;
- Evidence gathered and discovered in connection with Battelle's investigation of the accident;
- Evidence relating to Matthews-Daniel's decision to move the Usimatica rig alongside the KAB-101 platform;
- Evidence of Glen Carter's knowledge, expertise, and decision-making as the person on the scene of the move.

Ultimately, Plaintiffs argue that most of the documents in Mexico relate to damages while the documents in the United States related to liability and that the volume of evidence needed to prove damages will be less than the volume of documents needed to prove liability. Plaintiffs' assertions, however, are not supported by the record. While it is certainly true that some liability

evidence is in the Defendants' possession in the United States, it is simply not true that these documents constitute all or even the majority of the liability documents.

As previously discussed, many of the core liability documents relating to the rig, platform, oil wells, and life boats are located in Mexico and in the possession of third parties. This is the evidence necessary to demonstrate how the disaster unfolded, what decisions were made before, during, and after the disaster, who made those decisions, and what possible causes contributed to the accident. Plaintiffs cannot escape the fact that evidence related to the decisions made by those on and in control of the Usumacinta rig and KAB-101 platform at the time of the accident are central to the liability issues in this case. Plaintiffs' argument that the Court should give little weight to the damages documents located in Mexico because damages is unlikely to be a hotly contested issue is also unpersuasive. Finally, Plaintiffs theory of liability—and their corresponding assertion that most of the liability evidence is in the United States—is based largely on the findings of the Battelle Report that liability for the disaster in the Bay of Campeche rests not with PEMEX or Perforadora Central but with the Defendants. The Battelle Report, however, was commissioned by PEMEX and was the result of an investigation of witnesses, documents, and other evidence located largely in Mexico. If these cases were to proceed in this Court, the Defendants would not have access to the evidence located in Mexico— including PEMEX's documents and the witnesses to the disaster—in order to challenge the conclusions of the Battelle Report. Plaintiffs may not dictate the Defendants' litigation strategy by limiting their access to evidence and, thus, the issues and defenses available to Defendants. Keeping the case would require the Court to essentially adopt Plaintiffs' theory of liability while hamstringing the Defendants' ability to counter that theory.

Despite Plaintiffs' efforts to convince the Court that many of the important liability documents and witnesses are in the United States, the reality of the situation is that the vast majority of the evidence and witnesses regarding the accident itself are located in Mexico as well as all of the documents regarding Plaintiffs' injuries and damages. While it is true that some of the evidence and witnesses are in the United States, the great balance of the evidence is in Mexico and would be unavailable in this forum. The Court, however, recognizes that Defendants have relevant witnesses and documentary evidence in the United States that might not be readily available in Mexico. Accordingly, the Court ORDERS that the case will not be dismissed for *forum non conveniens* unless and until each defendant enters a stipulation that it will make its relevant witnesses and documents available in Mexico to the extent consistent with Mexican law.

The relative ease of access to evidence heavily favors Mexico as the appropriate forum for the consolidated cases.

### b. The Availability of Compulsory Process for Attendance of Unwilling Witnesses

The second private interest factor, the availability of compulsory process for the attendance of unwilling witnesses, also weighs heavily in favor of dismissal. This Court cannot compel attendance by any unwilling nonparty witness who is in Mexico. *DTEX, LLC v. BBVA Bancomer, S.A.*, 512 F.Supp.2d 1012, 1025 (S.D.TX. 2007), *affirmed and opinion adopted as the opinion of the Fifth Circuit*, 508 F.3d 785 (5th Cir. 2007). Defendants argue that many third-party witnesses are Mexican residents who will not be subject to the Court's subpoena power. These witnesses include:

- PEMEX, Pemex Exploración y Producción, Perforadora Central, Central de Desarrollos Marinos, S.A. de C.V., Sercomsa S.A. de C.V., and other employees working on the Usumacinta rig, the KAB-101 platform, and Wells 101, 103, and 121;

- PEMEX, Pemex Exploración y Producción, Perforadora Central, Central de Desarrollos Marinos, S.A. de C.V., Sercomsa S.A. de C.V., and other employees familiar with the maintenance and operation of the Usumacinta rig, the KAB-101 platform, Wells 101, 103, and 121, and the two *mandarinas*;
- Plaintiffs' medical providers; and
- The rescue workers.

These are the eye witnesses to the events leading up to the accident, the accident itself, and the Plaintiffs' injuries. As such, their testimony is crucial to the issues of liability and damages in this case. Even if these witnesses were available, they would likely only be available by deposition and would require translators, which would increase the cost of litigation. Obtaining depositions of any unwilling witnesses located in Mexico would have to be obtained through letters rogatory pursuant to the Hague Convention. "The procedure presents difficulties in obtaining adequate deposition testimony, is expensive, and is time consuming." *Vasquez v. Bridgestone/Firestone, Inc.*, 192 F. Supp. 2d 715, 725 (E.D. Tex. 2001), *rev'd on other grounds*, 325 F.3d 665 (5th Cir. 2003). "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to court, jury or most litigants." *Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir. 1987) (citing *Gulf Oil Corp.*, 330 U.S. at 511). This is because "conducting a substantial portion of a trial on deposition testimony precludes the trier of fact from its most important role; evaluating the credibility of the witnesses." *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992).

However, Plaintiffs contend that neither Mexico nor the United States has absolute subpoena power over all non-party witnesses. Plaintiffs list the following third party witnesses as being available only in the U.S.:

- ABS Consulting, a subcontractor involved in the investigation and drafting of the Battelle Report (as to maritime aspects of offshore oil exploration and production) and its employees;

- Sea Engineering Incorporated, a subcontractor involved in the investigation and drafting of the Battelle Report (as to soil-foundation issues) and its employees;
- Bethlehem Steel Company, the developer and manufacturer of the Usumacinta rig, and its employees;
- Houston Offshore Joint Venture, the former owner of Usumacinta, and its employees;
- Wilkens Weather Technologies and Oceanweather, Inc., both of which performed hindcast estimations of the offshore sea conditions caused by Cold Front No. 4, and their employees;
- Wittaker and Watercraft companies, the manufacturers of the lifeboats, and their employees;
- Alexander/Ryan Marine & Safety Company, which evaluated the construction and repair of the lifeboats, and its employees;
- Geoscience Earth & Marine Services, Inc., which evaluated likely scenarios for Usumacinta's sliding and effects of prior footprints on the foundation behavior, and its employees;

Many of these third party witnesses, though, are investigators involved in the Battelle Report who have no direct knowledge of the accident.    In addition, much of the direct evidence they relied on in their investigation appears to be in Mexico.  Thus, even if they are unavailable to testify at a trial in Mexico, much of the evidence they rely on in making their conclusions would be available.  Finally, while Plaintiffs state that these third party witnesses are located in the United States, they do not indicate where in the United States.  Accordingly, there is no evidence that this Court would have subpoena power over them.

Plaintiffs also lists as potential unwilling third-party witnesses: (1) the component part manufacturers for the products at issue; (2) independent contractors or other third parties in the United States who were involved in the decision to move or the actual process of moving Usumacinta alongside the KAB-101 platform; and (3) independent contractors or other third parties in the United States who were involved in the training of the personnel that worked on Usumacinta and the KAB-101 platform.   However, Plaintiffs have provided nothing to demonstrate or even suggest that there are any such manufacturers or independent contractors in the United States.

Finally, Plaintiffs argue that the witnesses listed by Defendants as being available only in Mexico are mostly oilfield and rescue workers who know very little about the root causes of the accident. Plaintiffs contend that the witnesses who participated in the decisions that resulted in the accident are in the United States and that these witnesses are more important than the witnesses in Mexico. However, the witnesses who participated in the decisions made by the Defendants that, according to Plaintiffs, resulted in the accident appear to be primarily party witnesses. Plaintiffs have not suggested that such party witnesses would be unavailable if this case were to proceed in Mexico. *See Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343 (8th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) (holding that the location of witnesses in the Cayman Islands did not weigh strongly in favor of dismissal because many of the witnesses were employees of the defendant, which could obtain their cooperation in traveling to testify). To ensure that the Defendants will make their employees available for trial, the Court ORDERS that as a condition of dismissal, Defendants each sign a stipulation that they will make any employee witness available for trial in Mexico to the extent consistent with Mexican law. However, the oilfield workers, rescue workers, and accident investigators located in Mexico are clearly necessary third party witnesses outside the subpoena power of the United States who cannot be made available by a similar stipulation.

Neither the United States nor Mexico is a perfect forum for these cases as there are third party witnesses who will likely be unavailable in each forum; however, the Court finds that the majority of the key third party witnesses are located in Mexico. Accordingly, the inability to compel the attendance of these third party witnesses weighs heavily in favor of dismissal.

### c. The Cost of Obtaining Attendance of Willing Witnesses

Because of the large number of witnesses located in both Mexico and the United States, the cost of obtaining the attendance of willing witnesses will be significant regardless of whether the case is tried in this Court or in Mexico. Accordingly, this factor is neutral.

### d. The Probability of View of the Premises

The next private interest factor, the ability to view the premises, can only weigh in favor of dismissal since the accident took place in Mexican territorial waters. Nonetheless, Plaintiffs are correct that viewing the scene of the accident by any court in the United States or in Mexico is unlikely because the accident took place 18 miles out to sea. Plaintiffs also persuasively argue that viewing the scene of the accident is less important now because of the availability of pictures and animation software that can recreate the accident scene. For these reasons, the Court gives this factor little weight.

### e. All Other Practical Problems

A court must consider practical factors, such as the ability to implead other entities, in its *forum non conveniens* analysis. *See Reyno*, 454 U.S. at 276-78. The inability to implead potential third-party defendants "clearly support[s]" dismissal of the case in favor of trial in a foreign court were all claims can be resolved in a single action. *Id*. Plaintiffs contend that they would be unable to implead any unwilling American third party in a Mexican court. Plaintiffs, however, do not suggest that there are, in fact, any American third parties they wish to implead. Similarly, Defendants argue that their inability to pursue claims for contribution against Mexican third parties who are not subject to the jurisdiction of the Court in this action—i.e., PEMEX, Pemex Exploración y Producción, Perforadora Central, Central de Desarrollos Marinos, S.A. de C.V., Sercomsa S.A. de C.V—weighs in favor of dismissing the case because judicial economy

favors resolution of all claims in one trial. On the other hand, Plaintiffs contend that Defendants have not shown that they would even be able to implead PEMEX or the other Mexican entities in Mexico or that PEMEX would be subject to liability in Mexico. At the hearing, the Court asked counsel for Defendants whether PEMEX would be subject to liability in Mexico. Defendants repeatedly stated that Mexican courts have exclusive jurisdiction over cases involving PEMEX, but could not answer the Court's question regarding whether PEMEX would be subject to actual liability in Mexico. As a result, the parties' supplemental briefing focused on this issue. Defendants' supplemental briefing pointed to statements by their Mexican law experts and asserted that PEMEX could be impleaded and would be subject to liability if the consolidated cases were dismissed and brought in Mexico. Plaintiffs, however, argue in their supplemental brief that the two year statute of limitations has run on any claims against PEMEX or the other Mexican entities. Thus, Plaintiffs argue that Defendants would not be able to implead PEMEX or any other Mexican company even if the case were to proceed in Mexico.

In his original expert declaration, filed before the alleged expiration of limitations while this case was still pending before Judge Clark, Defendants' Mexican law expert, Mr. Claus Von Wobeser ("Mr. Von Wobeser") stated that the statute of limitations for negligence claims was two years from the date on which the breach occurred and that the breach in this case occurred on or about October 23, 2007. Neither party has offered evidence disputing the two year statute of limitations or the date on which limitations began to run, nor is there any evidence as to whether the statute of limitations would be tolled under Mexican law. Thus, it appears that the statute of limitations for any negligence claim against PEMEX or any other Mexican entity may have expired on October 23, 2009.[6] Even if the statute of limitations has run, it is unclear

---

[6] The Court notes that the declaration of Mr. Von Wobeser attached to Defendants' consolidated motion to dismiss for *forum non conveniens* omitted this information, as did the supplemental affidavit of Mr. Von Wobeser attached

whether, under Mexican law, the statue of limitations for negligence claims would apply to any contribution claims Defendants might have against PEMEX or other Mexican entities.[7]  What is clear, however, is that PEMEX cannot be impleaded if the cases proceed in this Court, and this suggests that this factor leans slightly in favor of transfer.  Nonetheless, because of the uncertainty that any impleader will be available or necessary in either Mexico or this district, the Court gives this factor scant weight.

### f.   The Private Interest Factors Weigh in Favor of Dismissal

The Court finds that the private interest factors alone require dismissal of this case for *forum non conveniens*.  In a case strikingly similar to this action, The Fifth Circuit held that the private interest factors weighed in favor of granting a motion to dismiss on *forum non conveniens* grounds.  *Saqui* involved the death of a Mexican citizen while working on a mobile drilling rig in Mexican territorial waters.  *Saqui*, 595 F.3d 206.  The rig was owned by an American company and leased to PEMEX, and PEMEX controlled the well operations and provided the drilling crew to manage and operate the rig.  *Id.* at 208.  In upholding the district court's decision to dismiss the case for *forum non conveniens*, the Fifth Circuit noted that:

> (1) the accident occurred off the coast of Mexico; (2) the injured crew members and their surviving families . . . are citizens of and reside in Mexico; (3) [the deceased] died while working aboard a [rig owned by the defendant, American company,] that was leased to, and under the control of, Pemex, the national oil corporation of Mexico; (4) the maintenance crew . . . were employees of . . . a Mexican company with its principal place of business in Mexico; (5) [the American defendant] did not control the operations or have any employees aboard the vessel; (6) the key physical evidence and most of the witnesses to the accident were located in Mexico; and (7) the Mexican National Government investigated

to Schlumberger's post-hearing supplemental memorandum.  Defendants also failed to mention the expiration of the statute of limitations to the Court in response to the Court's direct questioning at the hearing as to whether PEMEX could be impleaded and whether it would be subject to liability in Mexico.
[7] For example, under Texas law, a claim for contribution does not arise until the underlying liability is determined.  *See Arnold v. Garlock Inc.*, 288 F.3d 234, 237 (5th Cir. 2002) ("The essential prerequisites for a contribution claim are a judgment finding the party seeking contribution to be a joint tortfeasor and the payment by such party of a disproportionate share of the common liability") (citation omitted).

the accident, created documents, and conducted interviews and site inspections in Mexico.

*Id*. at 213.

One important difference between *Saqui* and the present case is that the drilling rig at issue in *Saqui* was manufactured by the American defendant in Mexico. In this case, however, the allegedly faulty valves on the Usumacinta rig were developed, manufactured, and installed by two of the American defendants—Schlumberger and Halliburton—in the United States. Nevertheless, this fact is not enough to overcome the clear weight of the evidence that is located in Mexico. In *Reyno*, the Supreme Court upheld the district court's determination that fewer evidentiary problems would be posed in the trial of American plane manufactures in Scotland for liability arising from a plane crash in Scotland. *Reyno*, 454 U.S. at 257. The Court noted that a large proportion of the relevant evidence was in Scotland, despite the fact that documents concerning the design, manufacture, and testing of the propeller and plane were located in the United States. *Id*.

In the present cases, the key evidence and witnesses necessary to effectively investigate and try Plaintiffs' claims are located primarily in Mexico and would likely be unavailable if trial were to proceed in this Court. Accordingly, the private interest factors require dismissal in favor of trial in a Mexican court.

### 2. Public Interest Factors

Because the Court finds that the private interest factors require dismissal, it need not reach the public interest factors. *See In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1165 ("If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors"). However, the Court holds that the public interest factors also necessitate transfer and will briefly address them as well. The public interest

factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id*. at 1162-63.

### a. Administrative Difficulties

The first public interest factor, administrative difficulties, weighs only slightly in favor of dismissal. Defendants claim that the administrative difficulties of obtaining evidence from Mexico and applying Mexican law weigh in favor of dismissal. On the other hand, Plaintiffs assert that administrative considerations weigh in favor of trying these cases in this Court because, according to Plaintiffs' Mexican law expert, trial in Mexico would likely take a decade. The Court finds both arguments compelling. However, given the difficulties in obtaining key evidence and witnesses from Mexico and the necessity of applying Mexican law in these cases, the Court finds that the administrative difficulties weigh slightly in favor of dismissal despite the potential delay in resolution of these cases that may result from dismissal. *See DTEX*, 512 F. Supp. 2d at 1027 (holding that administrative difficulties such as obtaining evidence from Mexico and applying Mexican law weigh in favor of dismissal for *forum non conveniens*).

### b. Local Interest

The next public interest factor, the interest in resolving local controversies locally, supports dismissal in favor of a Mexican court. The Supreme Court has held that a foreign country has a strong interest in the litigation when the accident giving rise to the action occurred within its borders and where the victims are its citizens because there is a "local interest in having localized controversies decided at home." *Reyno*, 545 U.S. at 260. Plaintiffs are all

Mexican residents and they, or their decedents, were working on the platform as a result of their employment by either the Mexico's state-owned oil company, PEMEX, or various Mexican companies working in cooperation with PEMEX during the production of Mexican oil and gas resources. In addition, numerous investigations of the accident occurred in Mexico at the behest of the Mexican government. For example, multiple Mexican government agencies investigated and imposed monetary penalties on Mexican companies as a result of the accident, including the Mexican Environmental Protection Agency for environmental violations and the Mexican Merchant Marine Department for safety violations. The Mexican Attorney General also investigated the incident for possible criminal wrongdoing. All of this makes it abundantly clear that Mexico has a much stronger interest in these cases than the United States.

Plaintiffs argue that the United States and its citizens have an interest in this lawsuit because the defendants are Texas companies and residents and because the decisions—and in some cases the manufacturing and installation of allegedly faulty products—resulting in the accident were made in Texas. In short, Plaintiffs argue that Texas has a keen interest in the activities of companies doing business within its borders. Plaintiffs' argument, however, is not supported by the case law. In *Reyno*, the Supreme Court upheld the dismissal for *forum non conveniens* of a wrongful death action stemming from an airplane crash in Scotland brought by Scottish citizens against the American companies that manufactured the plane and propeller. *Reyno*, 454 U.S. at 260-61. In doing so, the Court rejected the plaintiffs' argument that American citizens had a strong interest in ensuring that American manufacturers are deterred from producing defective products and that additional deterrence might be obtained if the American companies were tried in the United States. *Id.* at 260-61. "The American interest in

this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Id*. at 261.

Mexico's strong local interest in resolving these cases weighs heavily in favor of dismissal of these cases for *forum non conveniens*.

### c. The Application of Mexican Law

The third and fourth public interest factors—the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action and the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law—counsel in favor of dismissal because the only remaining claims in all seven of these cases are claims under Mexican law. The need to apply foreign law points towards dismissal. *Reyno*, 454 U.S. at 260. The Court is not persuaded by the Plaintiffs' argument that the applicability of Mexican law is immaterial. In deciding Plaintiffs' Mexican law claims, the Court would require translators to translate the Mexican law as well as Mexican legal experts to explain the law. Accordingly, this factor weighs heavily in favor of dismissal.

### d. The Burden of Jury Duty

The final public interest factor, the interest in avoiding an unfair burden on citizens in an unrelated forum with jury duty, also weighs in favor of dismissal. As previously noted, Mexico has a far greater interest in this case than Texas. In addition, this case has almost no connection with the Eastern District of Texas. The only connection with this district is the fact one defendant, Gulf Coast, has an office in Lufkin, Texas. Jury duty should not be imposed on the citizens of the Eastern District of Texas in a case that is so slightly connected with the United States, much less this district. *See In re Bridgestone/Firestone*, 420 F.3d at 705 ("The citizens of the Western District of Texas have no connection to the Mañez-Reyes accident. The family does

not reside there, the accident did not occur there, and the tires at issue were neither designed nor manufactured there.").

### e. The Public Interest Factors Favor Transfer

Four of the five public interest factors—local interest, trial of a diversity case in a forum familiar with the law, avoidance of unnecessary problems in conflict of laws or in application of foreign law, and the burden of jury duty—weigh heavily in favor of dismissal for *forum non conveniens* and one factor—administrative difficulties—weighs slightly in favor of dismissal. Accordingly, the public interest factors, like the private interest factors, dictate dismissal of all seven cases in favor of trial in a Mexican court.

### C. Jurisdictional Stipulations and Return Jurisdiction Clause

According to the Fifth Circuit, if the court determines that the above considerations favor trial in a foreign forum, "it must finally ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if a defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1166; *see also In re Ford Motor Co.*, 591 F.3d at 414 ("There is no guarantee that Mexico will remain an available forum . . . . A return jurisdiction clause remedies this concern by permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum") (internal quotations and citation omitted). The dismissal of the seven consolidated cases for forum non conveniens is, therefore, subject to the following return jurisdiction clause: should the courts of Mexico refuse to accept jurisdiction for reasons other than Plaintiffs' refusal to pursue an action or to comply with the procedural requirements of Mexican courts, this Court may reassert jurisdiction upon timely notification of the same.

In addition to the return jurisdiction clause, the dismissal of this action is conditioned on Defendants making the following stipulations:

1) Defendants agree to appear and submit themselves to the jurisdiction of a Mexican federal or state court, waiving any jurisdictional defenses they might normally possess.

2) Defendants agree to waive any statute of limitations defense that they did not possess as of the date each of the seven cases was originally filed.

3) Defendants agree to submit to discovery in the Mexican forum in accordance with the procedural rules of the Mexican court.

4) Defendants agree that they will make all relevant witnesses and documents available in Mexico to the extent consistent with Mexican law.

5) Defendants further agree that they will make any employee witness available for trial in Mexico to the extent consistent with Mexican law.

## III. Plaintiffs' Request for Additional Discovery

In their response to Defendants' consolidated motion, Plaintiffs request leave to take additional discovery related to the *forum non conveniens* issue. Plaintiffs admit that Judge Clark allowed them to conduct discovery on the *forum non conveniens* issue in the *Dominguez* case (Case No. 9:08cv200). However, Plaintiffs argue that the discovery was too narrow and request that each defendant be required to produce a 30(b)(6) witness on the "factual and legal issues raised in this motion" as well as respond to written discovery with regard to "the factual and legal issues raised in this motion. The Court does not believe that additional discovery is needed in order to rule on the motion to dismiss. The parties have already provided extensive evidence on the location of the documents and witnesses in this case as well as evidence relevant to the other private and public interest factors in the forum non conveniens analysis. Accordingly,

Plaintiffs' request for additional discovery related to Defendants' motion to dismiss for *forum non conveniens* is DENIED.

## IV.    Conclusion

For the reasons discussed above, the Court CONDITIONALLY GRANTS Defendants' Consolidated Motion to Dismiss for Forum Non Conveniens (Dkt. No. 225 in Case No. 9:08cv200).  The Court FURTHER ORDERS that, subject to a return jurisdiction clause and the conditions laid out in this order, the following seven cases be dismissed for *forum non conveniens*:  *Dominguez v. Gulf Coast Marine & Assoc., Inc., et al*, Case No. 9:08cv200; *Lorenzana v. Gulf Coast Marine & Assoc., Inc., et al*., Case No. 9:09cv150; *Friaz v. Gulf Coast Marine & Assoc., Inc., et al*., Case No. 9:09cv162; *Perez v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv156; *Jimenez Govea v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv170; *Gordillo v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv164; *De La Cruz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv167.

The dismissal of each case from the Court's docket shall become effective once the Defendants have tendered a written statement assenting to be bound by the following conditions:

1) Defendants agree to appear and submit themselves to the jurisdiction of a Mexican federal or state court, waiving any jurisdictional defenses they might normally possess.

2) Defendants agree to waive any statute of limitations defense that they did not possess as of the date each of the seven cases was originally filed.

3) Defendants agree to submit to discovery in the Mexican forum in accordance with the procedural rules of the Mexican court.

4) Defendants agree that they will make all relevant witnesses and documents available in Mexico to the extent consistent with Mexican law.

5) Defendants further agree that they will make any employee witness available for trial in Mexico to the extent consistent with Mexican law.

Should any defendant fail to do so by May 2, 2011, Defendants' Consolidated Motion for Dismissal for Forum Non Conveniens will be considered waived, and all seven cases will proceed to trial in this Court.

Should the courts of Mexico refuse to accept jurisdiction of any of these cases for reasons other than Plaintiffs' refusal to pursue an action or to comply with the procedural requirements of Mexican courts, this Court may reassert jurisdiction upon timely notification of the same.

A copy of this order will be filed in each of the following seven consolidated cases: *Dominguez v. Gulf Coast Marine & Assoc., Inc., et al*, Case No. 9:08cv200; *Lorenzana v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv150; *Friaz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv162; *Perez v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv156; *Jimenez Govea v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv170; *Gordillo v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv164; *De La Cruz v. Gulf Coast Marine & Assoc., Inc., et al.*, Case No. 9:09cv167.

IT IS SO ORDERED.

SIGNED this 20th day of April, 2011.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE